This case asks whether Willbur-Ellis can enforce a non-compete and non-solicitation provision against Kevin Erikson when the employment agreement that created those obligations was fully performed and terminated under its terms almost four years earlier. Mr. Sutton, what is the intent of the parties? How does that play in? Judge Pearsall found that the intent of the parties here was clearly to have the non-compete extend beyond any term of employment, and the argument below was that this is South Dakota law, and that's an important element of South Dakota law. And your friends on the other side argue that that's what distinguishes this case from Miller. Why is that wrong? Judge Pearsall made his error, Judge Kobus, and the fundamental error of law that this court's going to have to review de novo was when he interpreted the agreement, and everyone agrees under South Dakota law, the applicable law governing this, that it's in terms of the agreement that matters. That's where the intention is discerned. And Judge Pearsall's mistake was looking back at paragraph 21 and trying to discern from that that they must have intended that it survived, and in doing so, read out the conditional language in the savings provision. So, admittedly, unlike Miller, this case is different because there's a savings clause, but that only matters if the savings clause is triggered. And under the facts of this case, and under the language that Wilbur Ellis, the master of the agreement that drafted it, they put a trigger and made the savings clause conditional, and there's no language indicating that it was triggered. So Judge Pearsall's mistake was that he took the existence of a savings clause and inferred that they must have intended that the restrictive covenants survive termination. You're not arguing ambiguity in the agreement, if I understand you. We are not. Correct. We agree that the agreement is not ambiguous. That's a question of law to the court. To the extent the court decides I'm wrong, I think then the proper way to look at it would be to construe it against Wilbur Ellis for two reasons. One, the draft or the agreement. Two, under South Dakota law, 5398 says that all contracts and restraint of trade are void as a matter of public policy, subject to the exceptions. And South Dakota Supreme Court, as recently as the Agriva case in 2020, which is the continued proclamation of the fact that that's our general default rule. Contracts and restraint of trade are void, subject to statutory exceptions. 53911, employee-employer non-competes, is an exception, but all of those exceptions need to be narrowly construed subject to the general default rule so we don't expand it beyond that general legislative proclamation, they're void. So when you look at it from those two perspectives, I agree it's not ambiguous, but if this court finds it is, under both of those reasons, the agreement must be construed against Wilbur Ellis. Counsel, we read the agreement as a whole, and I'm wondering how you construe the provision on confidentiality and whether Mr. Erickson would be bound contractually by the confidentiality provisions after the expiration of the original agreement. In my opinion, the answer is no, and here's why. Under this court's decision in Miller, under general basic contractual proclamations, once the agreement was fully performed and terminated under its terms, all of the corresponding obligations expire unless there's a provision in the contract indicating expressly that they intended it to survive, the trigger language under paragraph 21. That language doesn't exist in paragraph 5 for the restricted covenants or in the confidentiality. Now, the other side in their briefing indicates, well, that clearly can't be their position because they stipulated at the preliminary injunction hearing to a temporary restraining order slash preliminary injunction on confidentiality. When you look back at the record and the stipulation that I made on the record, it was very clear that we were dealing with a specific piece of information, a jump drive, that was also subject to the trade secret claims. So we have never conceded that, and the way I think the agreement needs to be read, it does not apply. But further, even assuming for argument's sake that you could infer that the confidentiality was intended to apply. Here's the reason that same analysis would not apply to the restricted covenants. Start with this. The other side has chastised us in their briefing saying we haven't provided any South Dakota cases that indicated that upon the expiration of the agreement, the restrictive covenants correspondingly expired. Now they haven't provided you any cases in South Dakota or anywhere that says when you have an agreement with an express term that says that that agreement ends in the absence of language indicating intent to survive, that the restrictive covenants would continue. South Dakota Supreme Court hasn't addressed the question we have here. Well, you know, that's true, and there doesn't appear to be any South Dakota case law on the point. But if you look at it, the language that's used extends the term of the contract perhaps, because that's the big argument. You start looking at it, it says, you know, this contract is going to terminate on March 31st, 2019. Thereafter, what's the exact language, I've got it right here, right, thereafter the employment of the employee by the employer shall continue at will. And then either party may terminate, blah, blah, blah. But, you know, if we look at what happens with continue at will, does that mean that the employment operates without any contractual understanding? And if we do look at sort of by analogy, you look at South Dakota laws applies to leases, leases that extend on a month-to-month term thereafter, that doesn't abrogate all the other terms of the lease. If we look at, you know, employment contracts that, you know, the real trick here is the terminates on such and such date. And does terminate mean that the employment obligation itself is just terminated so you're free to leave without, you know, anything? And then when it extends, what does it extend? And I take it your argument is that all it does is extend the term. And it extends the term at will, but that other than that, we now have an employment arrangement that is not bound by any agreement other than policies that may otherwise exist. General Erickson, that's exactly my argument. And here's the key. My perspective. The language says the term of this agreement, capital A, defined term. And when you look at their agreement that they drafted, it differentiates between employment and agreement all over the place. And agreement is very clearly referring to the employment agreement. Terminates on that date. Then it says the employment shall continue. And I would submit the right way to construe that is just a recognition of the change in his legal status. He changed from operating under an employment agreement in South Dakota law for four years because they wanted a four-year agreement to transition the business. That is important to the context of the basis for this agreement. After that point, then he goes back to the default, which in South Dakota is just an at will status and not subject to the restrictive covenants. And beyond that. Well, let's talk about just the language of the covenant not to compete, right? And the non-solicitation clause is that it expressly says that it takes effect following the termination of his employment, right? And you read the contract as a whole. We're trying to reconcile that with the fact that the agreement is otherwise expired. And then you have the savings clause, which is interesting. But it's not specifically a survival agreement, right? And so the question I've got is, obviously, the easy case would be it said, would say all the covenants related to solicitation and competing competition all survive this agreement until for a period of two years following the termination of employment, right, the easy case, right? But now what we have is we have something that just describes the rights and duties under the contract a little bit more amorphously. And then it does say that they expressly survive, right? Now, Judge Pearsall told us that he felt that it was incongruous to the point of absurdity, right, if that meant that there was no ongoing covenant because the two years would be relatively ethereal, right? Why is he wrong? Here's where I think Judge Pearsall made his mistake. There were two mistakes made when he looked at the savings provision. He was trying to deal with Miller. And he's trying to understand how does this agreement fit underneath this court's decision in Miller. And one of the factual differences, very admittedly, is that Miller didn't have a savings provision. And then he's looking at it from the perspective of how do I address that language and whether it causes it to survive. And he overlooked that the only reason he reached the conclusion he did was the only way I can interpret this agreement under paragraph 21 is the interpretation that says it was expected to apply to the restricted covenants. And as we laid out in our brief, there are other ways to interpret it. And that also, frankly, reads the conditional language out of the savings clause. And the other thing that I would note, and we brought it up in our reply brief, that Judge Pearsall overlooked is the importance of recognizing what 53-911 says. And how that impacts whether under South Dakota law, a restrictive covenant can survive termination of the agreement. Trigger event being employment rather than the agreement. And here's the key, 53-911, South Dakota Supreme Court has said we construe this statute narrowly. It says, essentially, first part, you can have a non-compete between an employer and an employee, quote, for any period not exceeding two years from the date of the termination of the agreement. Not termination of employment. Says the same thing for the non-solicitation. So when you look at this agreement through that lens, you have to, you can only enforce it if it complies with the statute. And what the statute says, it has to be tied to the termination of the agreement. So if I understand your position, if someone under this agreement quit on March 30th, there'd be a valid two-year non-compete. If they quit on April 1, there is no non-compete. That's correct, Judge Kobus, and that's what happens any time you have a term agreement. The reality is, is that when you put a duration on an agreement, one day you have contractual obligations, and the next day the agreement expires and you don't. So you're right, I think that's an unlikely scenario because they'd wait until the next day. So it's not practical, but that's the legal effect, I agree. So what about, and this is totally a field, is there any legal impact at all of Kevin Erickson's asking to be released from the covenant not to compete after it expired in your view? No, two reasons. One, and the biggest one legally, it's irrelevant unless you find the contract's ambiguous. And then at that point, you should construe it against them for the reasons we said. At this point, unless there are other questions, I'd like to reserve what limited time I have for my rebuttal. You may, thank you. Mr. Sosta? Good morning, your honors. May it please the court, counsel. We obviously take the position that Judge Pearsall did not abuse his discretion. And this really comes down to what the court has already talked about. So what is the standard of review? You referenced abuse of discretion in general, I think, in a TRO. But the fight here seems to be about a legal question, and that is the interpretation of the contract, and that's de novo. So what is it we're really doing here? Is it abuse or de novo review? Well, it's a little bit of both. So the question is whether or not Judge Pearsall abused his discretion by interpreting the contract in the way that he interpreted it. And it is a de novo review as it relates to the interpretation of the contract. But that's only true if Judge Pearsall abused his discretion in the way that he interpreted the contract. And what we would submit to the court is that he did not. And really this comes down to what the court has already referenced, which is we in South Dakota, South Dakota where courts require that the agreement be reviewed as a whole. Now, the appellant would like the agreement to be interpreted by looking myopically at certain provisions. But when we look at it as a whole, there is but one way to read this agreement. Now, I think this may- Can I ask just a question before we leave the standard of review? And it has to do with this. If we look at what we say, what is an abuse of discretion? We have all kinds of case law that says an error of law is an abuse of discretion, right? And the question of the interpretation of the contract is a question of law that we reviewed de novo. And so really what it turns on is this, is did the judge get the law right on the contract? Number two, is it an abuse of discretion based on his interpretation of that contract, assuming that it's not clearly erroneous and leads to a different result? Such that he made a mistake on the likelihood of success on the merits, right? So the abuse of discretion is really applied to the question is likelihood of success of merits. Because he said all the other factors really don't matter much, right? That's exactly right, your honor. And Judge Erickson, here's how I would describe this. So on the abuse of discretion, it is with regard to, in this case, the only element that we're talking about is likelihood of success in the merits. Which by the way, all Wilbur Ellis has to demonstrate is a fair chance of succeeding. Now, then the question becomes on the error of law. Did Judge Pearsall engage in legal error? Now, there are two ways to think about that. One is, did he misapply South Dakota's laws regarding interpretation of contract? And the answer there is no. Clearly no, I don't think there's any disagreement. So then the question becomes, is the interpretation when he applies that law subject to an error of law, a de novo standard, or is it subject to the abuse of discretion standard? We would submit to the court that in fact, his interpretation applying the law, he didn't misapply the law. The law is that he's required under South Dakota law to interpret the contract as a whole. To give all terms of the contract meaning. And once he applies that law, even if he may have misinterpreted it at this early preliminary stage. It is subject to the abuse of discretion standard. And the question then is, when he looked at the words of the contract, did he in fact abuse his discretion in how he interpreted that language? And again, we would submit no, and the reason turns on the three provisions that we've talked about. But most importantly, section 21, I think the parties agree that Miller, which I know well because I argued to two of your honors that same case, does not apply here. And for a number of reasons, but the most simple reason is this contract has a survival provision. And so we now have to look at that provision and somehow give it effect. And the word, and I'll use the appellant's definition. The word that we're triggering here is expressly. What does that mean? And Miriam Webster, according to appellants, say that it means to represent in words. Well, there are a lot of different ways that you can represent in words what is in fact happening here. And the only interpretation that makes sense here is that section 21 applies to section five. And here's the reason why. If it didn't apply there, this is the question that appellants have not answered, where else can it apply? There are no other provisions in this contract other than section five and section 11 that have post termination of employment obligations. So if section 21 doesn't require that those provisions carry on beyond the term, the expiration of the term, then where does it apply? And that question has not been answered. And if, in fact, no provisions are to carry beyond the extension of the term, the expiration of the term, then section 21 can't have meaning. And of course, under South Dakota law, we can't interpret the contract in that way. Reading all of these provisions together, it becomes quite obvious that section 21's language, while not perfect. There's no such thing as a perfect contract, otherwise we would have no breach of contract cases. But reading all of those provisions together comes to one conclusion, that section two contemplated. In fact, the parties agreed that the employment would extend beyond the term. Then you turn to section five, which says the triggering event for the restricted period is, in fact, the termination of employment. Counsel, since we have to construe this strictly, is that it seems to be a very broad definition of express language. I was going to ask, where are the express terms saying that the covenant's not to compete, survive? And you're saying it's by operation of the other section. That's exactly right, Judge. It's by operation of all of the provisions together. So we have to interpret this contract in a way that section 21 has meaning. Now, the alternative argument that the appellant has given is, well, no, it could still apply because it would result in the survival of the provision after employment ended, if it ended before the term. So for instance, if Mr. Erickson had resigned prior to the term, then the non-compete provisions would have, in fact, then survived the termination of his employment. But that's not the way that section 21 reads. It talks about survival of the agreement, not the employment. At the time, if Mr. Erickson, in a hypothetical situation, had, in fact, resigned his employment prior to the expiration of the term, or he had been terminated under section 3 by Will Brellis. Your argument, of course, is we've got to read section 2, section 5, and section 21 together. And that if we conform those sections to each other and read them in a way that enforces the plain language of all the agreements, it's plain where we have to get. And that's really what Judge Pearsall said. They have really two ways they're pushing back on it. They're saying, hold on, wait a minute. If you look at it textually, the sort of strict textualist approach to that contract would say, the termination of the agreement terminates on March 31st, 2019, right? And that that's what we've got to be bound by, and that that just ends the argument. Now you've told us why you believe that's not true. The second thing that they say, and I want to give you a chance to address it, is that if we look at 53-9-11, it tells us that these covenants not to compete to solicit business. And I hit the wrong button, so I can no longer read the language at you. But what it says is that the triggering event is the termination of the agreement. And they're using kind of a, and I don't mean this to sound like I'm denigrating any argument, but they're saying, there's magic words here. And the magic words are termination of the agreement. And we say termination of the agreement in the statute is the triggering event. The contract says termination of employment in paragraph five. But the agreement itself terminates in paragraph two. And so why is the magic of the exact mirroring language wrong? Well, I think for several reasons, Judge Erickson. So first, let's talk about what it means to construe this narrowly. Because the South Dakota courts have consistently, in a number of circumstances, enforced non-competes and held not only do they not construe it narrowly. What they say is, if an employee resigns, as Mr. Erickson did, we don't even look at reasonableness. As long as it meets the terms of section 53-911, it is, in fact, enforceable. And the cases in which the courts have, the South Dakota courts have opined that, in fact, this needs to be read narrowly are in different circumstances. So there was one circumstance where it was two companies. And I forget, we've cited the case and I was trying to find it a moment ago. But there were two companies in which the two companies were trying to enforce a anti-solicitation provision, employee anti-solicitation provision. And the court said, no, no, no, that's not within the scope of 53-911, and we need to read it narrowly as to what it says. Now, to address Judge Erickson, your specific question, which is the word agreement used in that statute. Well, candidly, we're talking about a little a agreement. So we're talking about the employment relationship. We're not talking about a contract. And if that were the case, virtually all non-competes would be subject to overturning on appeal because it wouldn't be enforceable. So I think, candidly, the case law does not support that narrow reading of the term agreement. And so in that circumstance, the fact that, in fact, the statute uses that language does not mean that this non-compete is unenforceable. Counsel, sometimes there's a fine line between a not quite perfect contract and an ambiguous contract. Yes. If we find this contract is ambiguous, can you win? If we were to find it, is there a path for you to prevail on appeal? Well, without question. So if the court were to look at South Dakota Statute Section 507A-2202, which is the statutory pronouncement of the parole evidence rule, what it says specifically is that an agreement may be explained and supplemented by the course of performance. Now, I'll point out to the court that that statute does not demand that the court find that the agreement was ambiguous for that to be the case. That statute simply says this is one of the ways in which a contract can be explained. Well, if we look at the course of performance, there can be very little doubt that Mr. Erickson understood, which is important, he's a party to this contract. And so his understanding of the intentions of the party are very important. But there can be very little doubt that he understood that this contract was still alive, that the restrictive covenants contained in the employment agreement still apply to him. Why do we know that? Because he testified in that way. At the evidentiary hearing, he testified under oath that, in fact, he had gone several times to his superiors and the human resources function at Wilber Ellis and requested, specifically requested, that the contract be waived so that he could take employment with a competitor. Well, there can be little doubt also that if he believed that the contract had lapsed upon the expiration of the term and that it no longer applied to him, that he would not have done that. And that's also important. Counsel mentioned that we haven't cited any cases outside of South Dakota in which the courts have found that an agreement without a survival provision or an imperfect survival provision have not enforced where they found that the agreements are unenforceable in those circumstances. And actually, in fact, we have cited numerous cases, including cases where the court found that although there was a survival provision and the non-compete provision and the restrictive covenants were not expressly referenced in that survival provision, they did, in fact, survive. And one of the distinctions that the court put in place is whether or not there had been a clear intention by the parties to basically disavow the non-compete upon the expiration of the term. And of course, that didn't happen here. The only thing- Go ahead. Finish your thought. The only thing that we have here is we have Mr. Erickson's view that the contract did, in fact, continue. And the only time that that came into question is when he was sued, which is also evidence that he understood the intention of the parties to mean that it would survive. Let's suppose that Mr. Erickson worked the entire four-year term of the agreement and that he continued working as an at-will employee for an additional 20 years. Is it your position under your reading of the agreement that he would still be bound to the covenant not to compete for a then 24-year-old contract? Your Honor, yes it is. And I know that there's reference in the briefing that somehow this is a perpetual contract. Well, that would be true with every non-compete case. Because in every circumstance, when the employer commences employment, there is no definition, there's no certainty as to length of time that that individual would remain employed. So it could be that the employee who had signed this non-compete at the outset would be an employee of the company for two years. And then a two-year period would follow after that that individual would be restricted. And then- Under South Dakota law, could a covenant not to compete and solicit stand separate from any employment, formal employment contract, right? So what if you hire someone who's an at-will employee and the only thing you ever put in front of them is a covenant not to compete and nothing else. There's no sale of the goodwill of the business, nothing else, getting under South Dakota law, would that be enforceable? As long as it meets the elements of the statute in terms of the restrictions that are put in place. And that brings to mind a question that, and I keep hating to bother to bring Miller into this because I understand it's a little bit of a sore spot. And I understand you didn't write the Miller contract and so, but it was what it was. Yes. It was a strange contract. But in any event, one of the things that we said as a court was that nothing in the enumerated statutory provisions allowed for agreements not to accept unsolicited business. Yet, in this case, Judge Pearsall did in fact prohibit indirectly accepting business which encompasses, of course, unsolicited business. Based on Miller, based on the statute, would we be required to vacate that particular provision to allow the acceptance of unsolicited business? And I see my time's expired, if I could just answer the question. Thank you. Listen, I can ask all the impractical and unwise questions and you can be compelled to answer them. Thank you, Your Honor. So the answer is no, and here's why. Because the geographic restriction around both solicitation and competition are the same. So meaning that outside of the geographic restriction, he is absolutely able to solicit and accept business. Within the geographic restriction, if he accepts business, it may not violate the non-solicitation provision under the Dali decision, as Your Honor pointed out in the Miller case. But accepting business within that geographic region, the restricted geographic territory, would violate the non-compete. So because they are kind of coterminous, it doesn't really matter. Thank you. Thank you, Your Honors. You may, Mr. Sutton. Thank you, Judge Erickson. And before I get going too far and run off track, I do want to thank this court on behalf of Simplot as well as Kevin Erickson, because these issues are important to us. I want to address a couple comments from counsel quickly. One, standard review. In my opinion, there's no dispute that these issues all turn entirely on a contractual interpretation issue, at least as Judge Pearsall did it. The only way, from my perspective, it's not a de novo standard of review is if this court finds the contracts ambiguous. Because then you get into potentially factual determinations. Secondly, I want to address, and Judge Erickson, I think you did a good job of identifying the two primary arguments. The textual aspect as well as the statutory aspect. But counsel made a comment that wasn't quite right. When he said to you that if you read 53-911, along with their agreement defining the term of the contract. And mind you, they're the master of the agreement. They're the ones that created this. They decided on a four year term agreement. If you read it to mean termination of agreement, capital A in the agreement, is the same concept of termination of agreement in the statute that there would never be non-competes. The fallacy in that argument is that in almost every non-compete case, there's not a specific term agreement. The trigger event is always just the ending of the employment. Here they chose to put a trigger in the termination duration of the agreement. That's what makes this case different under the statute. Finally, we get back to paragraph 21. And I think it's critical to keep in mind that again, they made this contract. They put it in front of someone that didn't have a lawyer review it and is just an employee. And with that context and through the lens of South Dakota law that you have to construe it narrowly, they decided on this language, the survival provision. The only thing they can rely on to get out from under Miller. It's not a general survival clause. They put a trigger. They conditioned it in the last clause. To the extent the obligations or rights as maybe expressly survive termination of the agreement, capital A. Can't find it in section five. It was never triggered. And as a result, we would submit that Judge Pearsall made an error of law, abused his discretion. We would ask that you reverse the grant of the preliminary injunction. Thank you. The time of the gentleman has expired and the court will take the case under advisement. I want to thank you for the briefing and the argument. It's been cogent and very helpful. You'll hear from us in due course. Thank you. Thank you, your honors. Thank you, your honors.